IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JEFFREY S. FRANKS, | ) | 4:10CV3145 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM AND ORDER ON THE |
| v. | ) | DEFENDANT'S MOTION FOR |
| | ) | SUMMARY JUDGMENT AND MOTION |
| STATE OF NEBRASKA, | ) | TO STRIKE |
| | ) | |
| Defendant. | ) | |
| | ) | |

On October 5, 2011, Defendant State of Nebraska filed a motion for summary judgment against Plaintiff Jeffrey S. Franks, (ECF No. 56), and on November 21, 2011, the defendant moved to strike certain exhibits that were submitted by the plaintiff in opposition to the defendant's summary judgment motion, (ECF NO. 68). My analysis of these motions follows.

## I.   THE DEFENDANT'S MOTION TO STRIKE

The defendant argues that I must strike the following documents from the summary judgment record because the plaintiff has failed to establish their authenticity: Exhibit 101 (ECF No. 65-1, p. 9); Exhibit 102 (ECF No. 65-1, p. 10); Exhibit 103 (ECF No. 65-1, p. 11); Exhibit 104 (ECF No. 65-1, p. 12); Exhibit 106 (ECF No. 65-1, p. 14); Exhibit 107 (ECF No. 65-1, pp. 15-21); Exhibit 109 (ECF No. 65-1, pp. 23-26); Exhibit 111 (ECF No. 65-1, p. 30); Exhibit 112 (ECF No. 65-1, pp. 31-32); Exhibit 114 (ECF No. 65-1, p. 34); Exhibit 115 (ECF No. 65-1, p. 35); Exhibit 125 (ECF No. 65-1, pp. 47-48); Exhibit 127 (ECF No. 65-1, p. 51); and attachments to Exhibit 128 appearing on pages 60-79, 83-84, and 87 of ECF Number 65-1, and on pages 1-92 of ECF Number 65-2. (See Def.'s Mot. to Strike, ECF No. 68.) The defendant also argues that the plaintiff is not qualified to testify about "business records" that were allegedly maintained in the defendant's files. (See Def.'s Br. at 3, ECF No. 69.)

1

"To be considered on summary judgment, documents must be authenticated by and attached to an affidavit made on personal knowledge setting forth such facts as would be admissible in evidence or a deposition that meets the requirements of Federal Rule of Civil Procedure 56(e)."[1] DG & G, Inc. v. Flexsol Packaging Corp. of Pompano Beach, 576 F.3d 820, (8th Cir. 2009) (quoting Shanklin v. Fitzgerald, 397 F.3d 596, 602 (8th Cir. 2005)).  See also NECivR 7.0.1(b)(2)(A), (C) ("When filing the opposing brief, the opposing party must also file and serve supporting evidentiary material not previously filed. . . .  An affidavit must identify and authenticate documents filed . . . .  The affidavit must be made on personal knowledge, set forth facts that would be admissible in evidence, show affirmatively that the affiant is competent to testify to the matters stated, and identify the related motion."); NECivR 56.1 ("Unless this rule states otherwise, the procedures of Nebraska Civil Rule 7.0.1 apply to summary judgment motions.").  "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient

---

[1] At the time DG & G, Inc. was decided, Federal Rule of Civil Procedure 56(e) stated, "A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit.  The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits."  Fed. R. Civ. P. 56(e) (2009).  In 2010, the provisions of former subdivision (e) were either relocated to other subdivisions or deleted.  See Fed. R. Civ. P. 56, advisory committee notes (2010 amendments). New subdivision (c)(4), which states, "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated ," carries forward the first sentence of former subdivision (e).  See Fed. R. Civ. P. 56, advisory committee notes (2010 amendments).  The requirement that materials not yet in the record must be placed in the record (which is embodied in the last sentence of subdivision (e)) is carried forward in new subdivision (c)(1)(A).  See Fed. R. Civ. P. 56, advisory committee notes (2010 amendments). "The requirement that a sworn or certified copy of a paper referred to in an affidavit or declaration be attached to the affidavit or declaration [was] omitted as unnecessary given the requirement in [new] subdivision (c)(1)(A) that a statement or dispute of fact be supported by materials in the record."  Fed. R. Civ. P. 56, advisory committee notes (2010 amendments).

I find that the amendments to Federal Rule of Civil Procedure 56 do not alter the requirement that, to be considered on summary judgment, a document must be authenticated by an affidavit made on personal knowledge or by deposition testimony sufficient to support a finding that the document is what it is claimed to be.

to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a).  This can be done through the use of circumstantial evidence.  See Kaplan v. Mayo Clinic, 653 F.3d 720, 725-26 (8th Cir. 2011) ("To authenticate an exhibit, a party 'need only prove a rational basis for that party's claim that the document is what it is asserted to be,' which may 'be done with circumstantial evidence.'" (citation omitted)); United States v. Bohmont, 413 F. App'x 946, 955 (8th Cir. 2011) ("The contents and appearance of an item can be used in conjunction with circumstantial evidence to authenticate an item.").  In some cases, for example, the authenticity of a document can be established through the testimony of a person who has no knowledge about the document's preparation, reliability, or accuracy, but who merely observed the document in a particular setting. E.g., Jones v. National American University, 608 F.3d 1039, 1045 (8th Cir. 2010); United States v. Long, 857 F.2d 436, 442 (8th Cir. 1988).[2]

Also, "[i]n ruling on a motion for summary judgment, the district court must base its determination regarding the presence or absence of a material issue of factual dispute on evidence that will be admissible at trial."  Tuttle v. Lorillard Tobacco Co., 377 F.3d 917, 923-24 (8th Cir. 2004) (quoting Fireman's Fund Ins. Co. v. Thien, 8 F.3d 1307, 1310 (8th Cir. 1993)) (internal quotation and alteration marks omitted).  A party "cannot rely on hearsay to avoid summary judgment."  Id. (citation omitted).

With the foregoing principles in mind, I shall proceed to determine whether the exhibits cited in the defendant's motion to strike may be considered in opposition to the defendant's summary judgment motion.

Exhibit 101 is a document titled "Performance Plan Form."  (Pl.'s Index, Ex. 101, ECF No. 65-1.)  In his affidavit, the plaintiff states that "Exhibit 101 . . . is a copy of his Performance Plan Form that he received as part of his job, from the defendant, that indicates how he is able to perform his duties.  Exhibit 101 was for the period of 2004 to 2005 while the affiant was suffering from a documented VA disability to his neck . . . ."  (Pl.'s Index, Franks Aff. ¶ 2, ECF No. 65-1.)  I find that

---

[2] I note in passing that the defendant does not argue that any of the plaintiff's documents are inauthentic (e.g., that they have been altered in some way, or that they are not, in fact, what the plaintiff claims they are).  Rather, it argues only that the plaintiff has failed to satisfy the threshold requirements described above.  I do not mean to suggest that these requirements are trivial; neither, however, are they onerous.

the plaintiff's affidavit is sufficient to support a finding that the document is what he claims it to be (i.e., a form that he received from the defendant that describes his ability to perform a particular job duty).  Cf. Jones v. National American University, 608 F.3d 1039, 1044-45 (8th Cir. 2010) (affirming district court's finding that job posting was properly authenticated by the testimony of two employees who saw the posting on employer's bulletin boards, even though the posting differed from the employer's usual format, and its author was unknown).  Moreover, though the document itself is quite vague,[3] the plaintiff's affidavit is sufficient to support a finding that the exhibit was the defendant's own statement, and therefore it is not hearsay.  See Fed. R. Evid. 801(d)(2).  The document will not be stricken.

Exhibit 102 is a document titled "Calculation Sheet – Overall Rating."  (Pl.'s Ex. 102, ECF No. 65-1.)  The plaintiff states that his "performance rating is further supported by Exhibit 102 which are copy [sic] of the Calculation Sheet which was made by affiant['s] supervisors that and [sic] given to the affiant at the time of the evaluation and is part of his personnel file."  (Franks Aff. ¶ 3.)  The defendant argues that there is nothing in the plaintiff's affidavit showing that he is qualified to testify about whether a document was maintained in a personnel file, (Def.'s Br. at 3, ECF No. 69), and I agree.  In his response brief, the plaintiff claims that he "can verify what was part of his personnel file" because he had "access to his file," (Pl.'s Br. at 3, ECF No. 72), but his affidavit does not corroborate this claim.  Furthermore, there is no indication that the plaintiff is qualified to establish that his exhibit falls within the business record exception to the hearsay rule, Fed. R. Evid. 803(6).[4]

---

[3] The document is neither signed nor dated, and it identifies neither the entity that generated it nor the person who completed it.  (See Pl.'s Ex. 101.)

[4] The plaintiff argues otherwise.  (Pl.'s Br. at 2, ECF No. 72.)  More specifically, he states,

> Here the Plaintiff is a qualified person [to lay a foundation for the documents] because these are business records of the defendant that were delivered to the Plaintiff in the course of his employment, as part of his employment and dealt directly with his performance.  These records are in fact his copies that he kept knowing that the defendant had a policy to destroy personnel records.  Thus, these are in fact admission [sic] by the defendant of his performance and are admissible.

4

Nevertheless, I find that the plaintiff is qualified to testify that the exhibit was made by his supervisors, that it pertains to him, and that it was given to him at the time of an evaluation. I also find that the affidavit is sufficient to support a finding that the exhibit is not hearsay. See Fed. R. Evid. 801(d)(2). I note, however, that neither the affidavit nor the exhibit itself provide any relevant dates. Therefore, although I shall not strike the exhibit, I doubt whether it will inform my analysis of the defendant's summary judgment motion.

Exhibit 103 is a document bearing the headings "Initial Review of Duties and Expectations" and "Completed Performance Plan and Ratings." (Pl.'s Ex. 103, ECF No. 65-1.) The plaintiff states, "Exhibit 103 is a document promulgated by the defendant in the course of work to evaluate the plaintiff's performance." (Franks Aff. ¶ 3.) Unlike the documents discussed previously, this exhibit is signed and dated (though the persons who made the signatures have not been identified), and it clearly relates to the plaintiff's job performance at the Nebraska Department of Corrections. Although the plaintiff's affidavit is somewhat unclear, I take his claim to be that Exhibit 103 is a statement by the defendant about the plaintiff's job performance that was provided to the plaintiff "in the course of work." I find that the plaintiff has the requisite personal knowledge to establish that the document is what he claims, and, like the documents discussed previously, I am not persuaded that it is hearsay. I shall not strike Exhibit 103.

Exhibit 104 is a document titled "Nebraska Department of Correctional Services Supervisor's Counseling Log." (Pl.'s Ex. 104, ECF No. 65-1.) The plaintiff describes Exhibit 104 as "a counseling on the use of sick leave," and he "states that he received a copy of Exhibit 104 from the

---

(Id.) Evidence that someone employed by the defendant gave the documents to the plaintiff does not establish that they are "business records of the defendant." Furthermore, the fact that the plaintiff kept copies of documents that were provided to him does not make him a "custodian" capable of establishing that the documents satisfy the business record exception to the hearsay rule. Though it is true that a custodian need not have personal knowledge of a document's creation, the custodian must be capable of testifying that the documents were prepared and kept in the course of a regularly conducted business activity. See, e.g., United States v. Turner, 189 F.3d 712, 720-21 (8th Cir. 1999). Nothing in the plaintiff's affidavit indicates that he is qualified to provide such testimony.

As noted above, however, I agree with the plaintiff that the document is admissible because the document is the defendant's own statement.

defendant in the normal course of business at the time that said counseling took place and that said document should be a part of affiant [sic] personnel file which is totally controlled by the defendant." (Franks Aff. ¶ 4.)  The plaintiff has not shown that he has the personal knowledge necessary to establish that the document is, or was, maintained by the defendant in its files.  It merits mention that the document states on its face that it "will not become a part of the personnel file." (Pl.'s Ex. 104.) Otherwise, however, the plaintiff has provided a rational basis for his claim that the document is what he claims it to be, and he has shown that the document is the defendant's own statement.[5]  The document will not be stricken, but I do not accept the plaintiff's claim that Exhibit 104 was maintained in the defendant's files.

Exhibit 106 is a form titled "Nebraska Workers' Compensation Court, First Report of Alleged Occupational Injury or Illness."  (Pl.'s Ex. 106, ECF No. 65-1.)  The plaintiff's affidavit includes only passing references to this exhibit.  (See Franks Aff. ¶¶ 4, 6 ("Affiant would point out to the Court that the use of sick leave during the 2004 to 2005 work year was due to the inmate assault, Exhibit 106 . . . .  Defendant was constantly notified of my physical limitations and that concern was raised as early as November of 2006 whether the Department would treat the affiant fairly for advancement due to the injuries he suffered at work, Exhibit 106 . . . .").)  The plaintiff has not provided any evidence that could support a finding that the document is authentic; furthermore, I find that the document is hearsay.  Exhibit 106 will therefore be disregarded.

In opposition to the defendant's motion, the plaintiff argues that Exhibit 106 "is a business record of the [d]efendant." (Pl.'s Br. at 3, ECF No. 72.)  He adds that he "is familiar with the record keeping practices of the defendant," (id. at 4), and he suggests that he can establish a foundation for the document because he "received a copy of Exhibit 106 and is the subject of Exhibit 106," (id. at 3).  The plaintiff's affidavit does state that "he is personally aware that the defendant destroys personnel records of the employees because he has been ordered on several occasions as part of his duties to destroy records." (Franks Aff. ¶ 10.)  I find, however, that this evidence is not sufficient

---

[5] I note in passing that Exhibit 104 is similar in form to "Supervisor's Counseling Log" documents submitted by the defendant in support of its motion for summary judgment.  (See, e.g., Def.'s Index, Ex. 3-A, ECF No. 58-3.)  This similarity weighs in favor of a finding that the document is authentic, given the totality of the circumstances.  See Fed. R. Evid. 901(b)(4).

to show that the plaintiff is a "qualified witness" within the meaning of Federal Rule of Evidence 803(6). In other words, he cannot testify, based on his own personal knowledge, that the exhibit is the defendant's business record. Also, there is no evidence that Exhibit 106 was made, kept, or even possessed by the defendant. Although the plaintiff is named in the document, and although he evidently acquired a copy of the document from some unknown source, these facts are not sufficient to establish the document's authenticity. Exhibit 106 will not be considered in my analysis of the defendant's summary judgment motion.

Exhibit 107 is a seven-page document. (Pl.'s Ex. 107, ECF No. 65-1.) The first page bears a header stating, "Department of Veterans Affairs, Atlanta Regional Office," and a June 1998 date stamp. (Id. at 1.) The plaintiff states that Exhibit 107 constitutes evidence that between 2004 and 2005, he "was suffering from a documented VA disability to his neck which caused Migraine headaches." (Franks Aff. ¶ 2. See also id. ¶ 4.) The plaintiff's affidavit does not establish the authenticity of this exhibit, and the document is hearsay. Thus, I cannot consider it.

The plaintiff argues that he "is a qualified person to describe the document" because "he produced the document at the request of the [d]efendant." (Pl.'s Br. at 4-5, ECF No. 72.) I have no reason to doubt the plaintiff's claim that he disclosed Exhibit 107 to the defendant during the course of discovery, but this does not establish that the document is what the plaintiff claims it to be. Exhibit 107 will be stricken.

Exhibit 109 is a four-page document bearing the words "Operational Memorandum, Omaha Correctional Center" on page 1. (Pl.'s Ex. 109 at 1, ECF No. 65-1.) The remaining pages have headers stating, "Administrative Regulation, Department of Correctional Services, State of Nebraska," and "Leave Provisions." (Id. at 2-4.) The plaintiff's affidavit contains only the following reference to Exhibit 109: "Affiant further has reviewed Exhibit 109 and Exhibit 110 which is the Sick Leave policy of the defendant and notes that even though he was counseled not a single category of abuse was noted." (Franks Aff. ¶ 5.) There is no indication that the plaintiff has any knowledge about this exhibit beyond that which he might have gained by simply reading it. I find that the plaintiff has not established that Exhibit 109 is authentic, and therefore I must disregard the exhibit.

7

Exhibit 111 is a document bearing the letterhead of the Nebraska Department of Correctional Services.  (Pl.'s Ex. 111, ECF No. 65-1.)  In his affidavit, the plaintiff states "that Exhibit[s] 111, 112, 113, and 114 continues [sic] to show that the Defendant was constantly notified of my physical limitations and that concern was raised as early as November of 2006 whether the Department would treat the affiant fairly for advancement due to . . . his accidental injury, Exhibits 111, 112, 113, and 114.  Affiant further states that exhibit[s] 111, 112, 113, and 114 are all business records kept by the defend tin [sic] the normal course of employment and are part of the Plaintiff [sic] personnel file which is kept by the defendant."  (Franks Aff. ¶ 6.)  The plaintiff has not shown that he is qualified to testify that Exhibit 111 is the defendant's business record or that it was kept in the plaintiff's personnel file.  Nor has he shown that he has personal knowledge that could support a showing that Exhibit 111 is authentic.  Though the exhibit is similar in form to documents submitted by the defendants, (see, e.g., Def.'s Index, Ex. 1-1, ECF No. 58-1), there is no other evidence–circumstantial or otherwise–indicating that the document is what the plaintiff claims it to be.  Exhibit 111 will therefore be stricken.

Exhibit 112 is a two-page document that, like Exhibit 111, bears the letterhead of the Nebraska Department of Correctional services.  (Pl.'s Ex. 112, ECF No. 65-1.)  For the reasons discussed in the preceding paragraph, I find that the authenticity of Exhibit 112 has not been established.  The document will not be considered.

Exhibit 114 appears to be an email dated September 26, 2007, with the subject "Cpl. Franks." (Pl.'s Ex. 114, ECF No. 65-1.)  Like Exhibits 111 and 112, Exhibit 114 has not been shown to be authentic.  It too will be stricken.

Exhibit 115 is a memorandum addressed to "Corporal Jeffrey Franks" from "Major Tom English."  (Pl.'s Ex. 115, ECF No. 65-1.)  The plaintiff's affidavit includes one sentence that refers to this exhibit.  That sentence reads, "Affiant states that he tried to work with the defendant as evidenced by Exhibit 115 and Exhibit 116 but again was unable to reach any resolution."  (Franks Aff. ¶ 7.)  The affidavit fails to show that Exhibit 115 is authentic, and it will be stricken.

Exhibit 125 is a two-page memorandum addressed to "Cpl. Jeffrey Franks."  (Pl.'s Ex. 125, ECF No. 65-1.)  The plaintiff's affidavit states, "[E]xhibit[s] 118 though 126 show[] his complaint of treatment to the defendant and their continued response.  Exhibit[s] 118 through 126 are all

business records of the defendant that should be kept in the Plaintiff['s] personnel file and show not only the treatment of the plaintiff by the defend [sic] but further show that he was denied overtime, and choice of location all after plaintiff contested his treatment due to disability, and his right to carry his bible." (Franks Aff. ¶ 9.)  The plaintiff has not shown that he is qualified to testify that the exhibit is a "business record of the defendant" or that it should have been kept in his personnel file. Moreover, he has not provided evidence that could support a finding that the document is what he claims it to be.[6]  Exhibit 125 will be disregarded.

Exhibit 127 is a document titled "Nebraska Department of Correctional Services Departmental Correspondence."  (Pl.'s Ex. 125, ECF No. 65-1.)  One sentence in the plaintiff's affidavit refers to this exhibit.  This sentence states, "And was notified as evidenced by Exhibit 127 that affiant's records were going to be destroyed." (Franks Aff. ¶ 10.)  In his brief, the plaintiff adds that he "had access to" Exhibit 127 because it was "written and delivered to the Plaintiff."  (Pl.'s Br. at 5, ECF No. 72.)  The allegations made in the plaintiff's brief are not supported by his affidavit, and I find that the affidavit does not provide sufficient evidence to support a finding that Exhibit 127 is authentic.  The exhibit will therefore be stricken.

Finally, the defendant moves to strike attachments to Exhibit 128 appearing on pages 60-79, 83-84, and 87 of ECF Number 65-1, and on pages 1-92 of ECF Number 65-2.  (See Def.'s Mot. to Strike, ECF No. 68.)  After studying page 1 of Exhibit 128, I take it that the exhibit's attachments comprise "the Plaintiff's Amended Answers to Defendant's First Set of Interrogatories, Requests for Production of Documents and Requests for Admissions."  (Pl.'s Ex. 128 at 1, ECF No. 65-1.)  The plaintiff has made no attempt to authenticate Exhibit 128, or any of its attachments, in his affidavit. (See generally Franks Aff.)  Therefore, the defendant's motion to strike the aforementioned pages will be granted.

The plaintiff argues in opposition to the defendant's motion that "Exhibit 128 is merely the documents that the Plaintiff provided to the Defendant as answers the [sic] Defendant's discovery." (Pl.'s Br. at 5, ECF No. 72.)  He adds, "These are documents that the Defendant requested be

---

[6] In his brief, the plaintiff argues that he "had access to" Exhibit 125 "because [it was] written an[d] delivered to the Plaintiff.  Thus he had knowledge and possession of said document."  (Pl.'s Br. at 5, ECF No. 72.)  The plaintiff's affidavit does not support these claims.

produced by the Plaintiff thus requiring the Plaintiff [to] compile the documents and deliver the same to the Defendant.  The actual act of compiling the documents means that the Plaintiff had to acquire the document, possess the document[,] care for the document, keep track of the document and maintain the document.  (Affidavit of Franks ¶ , Fil. No. 66.)  As such he is more than qualified to discuss the document[s] and any relevancy they may have to the Argument that facts are in dispute and the Motion for Summary Judgment should be denied."  (Pl.'s Br. at 5-6, ECF No. 72.)  None of these allegations are supported by the plaintiff's affidavit; furthermore, the fact that the plaintiff somehow acquired (and later produced) the documents is not, in and of itself, sufficient to authenticate them.

In summary, I shall strike Exhibits 106, 107, 109, 111, 112, 114, 115, 125, and 127 in their entirety, along with the pages of Exhibit 128 specified by the defendant.  In all other respects, the defendant's motion to strike is denied.

## II.    THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A.    Background[7]

The plaintiff began working for the Nebraska Department of Correctional Services (DCS) on April 19, 1999.  (Def.'s Index, Ex. 1, Franks Dep. at 5:15-18, ECF No. 58-1.)  He was assigned

---

[7] The facts set forth in this subsection are taken from the Defendant's "Statement of Facts," (see Def.'s Br. at 2-7, ECF No. 57), and the exhibits cited therein; from the Plaintiff's "Statement of Disputed Facts," (see Pl.'s Br. at 1-3, ECF No. 65), and the exhibits cited therein. My consideration of the plaintiff's materials is, of course, subject to the findings I have made in Part I above.

The defendant argues that each of its own statements of facts should be deemed admitted because the plaintiff has failed to comply with Nebraska Civil Rule 56.1(b)(1). (See Def.'s Reply Br. at 1-2, ECF No. 67.) After carefully considering the parties' statements of facts, I find that the defendant is substantially correct, and that the plaintiff has largely failed to controvert the facts alleged by the defendant. I also find, however, that the defendant has not properly supported all of its material facts. (See, e.g., Def.'s Statement of Facts ¶ 27 (citing Def.'s Index, Ex. 1, Franks Dep. at 72:10-12, ECF No. 58-1).) See also NECivR 56.1(b)(1) ("Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response." (emphasis altered)). In short, I accept most, but not all, of the facts alleged by the defendant to be free from genuine dispute.

10

to the Omaha Correctional Center (OCC), where he worked as a correctional officer and correctional corporal.  (Id. at 5:19-22, 6:4-8.)

In March 2001, the plaintiff wrote a report in response to a "Department directive . . . concerning use of prescription medication taken by staff."  (Pl.'s Index, Ex. 108, ECF No. 65-1.)  In this report, the plaintiff wrote that he had been "diagnosed by the VA Medical System with [c]ervical strain with migraine headaches," and that he was taking four prescription medicines to treat his condition.  (Id.)  He also wrote that he received "a monthly disability pension for this," and that his "use of these medicines has . . . varied since 01/97."  (Id.)

In January 2005, the plaintiff slipped, fell, and suffered fractures in his left leg.  (Def.'s Statement of Facts ¶ 2, ECF No. 57.)  Bryan Bredthauer, M.D., performed two surgeries to treat the plaintiff's injuries.  (Id. ¶ 3.)  The plaintiff returned to work sometime after the second surgery,[8] but he was limited to working in the Central Control Area of the OCC, (see Def.'s Statement of Facts ¶ 5), and it is unclear whether he returned immediately to full-time duty.  A record dated April 12, 2005, states that the plaintiff was "back to work on crutches" and was "doing a very good job in Central Control."  (Pl.'s Index, Ex. 103, ECF No. 65-1.)  At approximately the same time, however, the plaintiff was counseled about "possible sick leave abuse."  (Pl.'s Index, Ex. 104, ECF No. 65-1.)  In response to this counseling, the plaintiff explained that he needed to use sick leave during 2004 and 2005 for two hernia surgeries, his leg surgeries, his cervical strain, and other specific needs, and he complained that his personal integrity and his employment review were being damaged due to "situations beyond [his] control."  (Pl.'s Ex. 105, ECF No. 65-1.)

In January 2006, Dr. Bredthauer determined that the plaintiff could "continue with work activities not involving running or lifting more than 75 pounds."  (Def.'s Index, Ex. 2-8, ECF No. 58-2.)  On October 11, 2006, Dr. Bredthauer completed a DCS "Physical Status Update Form" stating that the plaintiff could work "40 plus" hours per week, but he was limited "to Central Control Area only."  (Def.'s Index, Ex. 2-11, ECF No. 58-2.)

On November 3, 2006, Dr. Bredthauer noted that there had been "full healing of [the plaintiff's] bony injuries," and he did not expect that "any additional medical or surgical care [would

---

[8] The parties have not specified the date when the plaintiff returned to work.

be] necessary." (Def.'s Index, Ex. 2-10 at 2, ECF No. 58-2.) Dr. Bredthauer also noted that the plaintiff had "ongoing atrophy of his calf" that was "consistent with an 8 percent permanent impairment of the left lower extremity according to the <u>AMA Guides to the Evaluation of Permanent Impairment, 5th Ed.</u>" (<u>Id.</u>) During his deposition, Dr. Bredthauer explained that "[t]he percentage of impairment itself does not involve any particular restriction of activities." (Def.'s Index., Ex. 2, Bredthauer Dep. at 16:12-13, ECF No. 58-2.) Rather, it is "merely a physical assessment and . . . an attempt at standardization of . . . the degree of impairment of an individual related to an injury." (<u>Id.</u> at 16:13-16.) Although Dr. Bredthauer indicated that the plaintiff could "resume his usual activities," he also wrote that the plaintiff "should not run, jump, or perform heavy pushing or pulling." (Def.'s Index, Ex. 2-10 at 2.)

On a Physical Status Update form dated August 17, 2007, Dr. Bredthauer noted once again that the plaintiff could work "40 plus" hours per week, but only in the Central Control Area. (Def.'s Index, Ex. 2-13 at 1, ECF No. 58-2.)

On the morning of September 10, 2007, 43 employees were "pat searched" as they entered the OCC. (Def.'s Index, Ex. 3-C, ECF No. 58-3.) Sixteen of these employees, including the plaintiff, were found to have "contraband items" in their possession. (<u>Id.</u>) In the plaintiff's case, the contraband item was a Bible. (<u>Id.</u>) A counseling form signed by the plaintiff and dated September 12, 2007, states,

> The possession of this item within the confines of the Omaha Correctional Center is in direct violation of the Nebraska Department of Correctional Services Employee Handbook, page 8, section 2.1.2, "Employees shall not introduce contraband into any facility. Contraband is defined as any article not officially issued, purchased, or brought into the facility via proper channels." . . .

> This is a negligence of duty and will not be tolerated in the future. Any further incidents of this nature will be dealt with accordingly.

(Def.'s Index, Ex. 3-D, ECF No. 58-3.) The form includes a boilerplate paragraph stating,

> The preceding counseling interview was conducted to make the employee aware of needed improvement. This record [is not] intended to be a documented disciplinary action and will not become a part of the personnel file. However, repeated performance of this nature may require some more severe action and this record may be used to substantiate future action . . . .

(Id.)[9]

Also on September 12, 2007, the plaintiff wrote a report in which he expressed his desire "to make a formal request to continue carrying [his] Bible in [his] pocket as an article of faith." (Pl.'s Index, Ex. 116, ECF No. 65-1.) He noted that his "introduction of contraband" involved an item that was "readily available to inmates and encouraged to be utilized," and he declared that a Bible would not be confiscated from an inmate unless it had been "altered." (Id.) He also complained that there was a "disparity" between his treatment and that of other officers. (Id.) Specifically, he wrote that while his Bible was confiscated during the searches, another corporal was allowed to take his college textbooks back to his car. (Id.)

Evidently, the plaintiff was not allowed to continue to carry his Bible into the OCC. (E.g., Franks Dep. at 139:12-20.) Although he was given permission to carry a crucifix, the plaintiff believes that this option did not give him "the right to practice [his] sincerely-held religious belief" in the way that he wanted. (Id. at 139:18-140:3.) The plaintiff's affidavit also states that "the Department allowed a female officer to read and study while at work and thus was allowed to bring in her books and magazines but [it] would not allow [the plaintiff] to carry a pocket size bible" that "did not [interfere] with his ability to do his job in any way." (Franks Aff. ¶ 7.)

On October 11, 2007, Dr. Bredthauer cleared the plaintiff to work all posts at the OCC. (Bredthauer Dep. at 20:5-9; Def.'s Index, Ex. 2-14, ECF No. 58-2.) By this date, the plaintiff's "x-rays had demonstrated full healing," "he had full range of motion," and the "lingering atrophy of his calf muscles . . . had resolved." (Bredthauer Dep. at 19:24-20:3.)

A Supervisor's Counseling Log dated December 17, 2007, states that the plaintiff's sick leave usage had been reviewed, and there was "a reason for concern regarding possible sick leave abuse." (Def.'s Index, Ex. 3-A, ECF No. 58-3.) More specifically, it states that the supervisor was concerned by the plaintiff's pattern of sick leave use and his "low balance of sick leave accumulation, given [his] tenure." (Id.) It also states that the plaintiff must "significantly improve [his] sick leave balance," and it warns that the plaintiff's "sick leave balance [would] again be reviewed in six . . .

---

[9] Part of the defendant's exhibit is illegible. To complete the paragraph quoted above, I have referred to the defendant's brief, (see Def.'s Statement of Facts ¶ 28), and to other exhibits that contain nearly identical boilerplate, (see, e.g., Def.'s Index, Ex. 3-A, ECF No. 58-3).

months." (Id.) In addition, the counseling log includes a boilerplate paragraph similar to the one quoted above. Among other things, this boilerplate paragraph states that the "record is not intended to be a documented disciplinary action and will not become a part of the personnel file." (Id.)

A Supervisor's Counseling Log dated June 10, 2008, states that the plaintiff was "found to be in a continued pattern of sick leave abuse" characterized by the use of "small amounts of sick leave on a regular basis" and "a low balance of sick leave accumulation." (Def.'s Index, Ex. 3-B, ECF No. 58-3.) It continues,

> Because of this performance problem with the use of sick leave you will be required to submit substantiating evidence from a Doctor each and every time you take sick leave for the next six-month period and your next review.
>
> Supervisors will also maintain an intensive supervision of your use of sick leave for the next six months to include:
>
> (a) Calling your home to verify your presence.
> (b) Visit your home to verify your presence.
> (c) Require that you report each time you leave and return to your home on the days you call in sick.
> (d) Require that you call in each and every day that you are in a sick leave status.

(Id.) The counseling log also includes a boilerplate paragraph similar to those described previously. (See id.)

In an incident report dated November 7, 2008, the plaintiff wrote that he felt "singled out," "harassed," and "discriminated against," and he claimed that he was "confronted with a hostile working environment." (Pl.'s Index, Ex. 117, ECF No. 65-1.) A second incident report dated November 10, 2008, purports to be "a follow-up supplement" to the plaintiff's "report regarding the events that transpired on the night of 11-07-2008," and it provides further details about the plaintiff's grievance. (Pl.'s Index, Ex. 118, ECF No. 65-1.) In essence, the plaintiff was upset by his supervisor's handling of a scheduling dispute, and he accused his supervisor of "alter[ing] the truth so as to place some blame upon [the plaintiff] for the entire mishap." (Id.) In a third incident report dated November 25, 2008, the plaintiff wrote that he was "the only person on shift who has not been offered their post of choice when working a day off"; that he had not been offered any overtime since November 9, 2008; and that these facts amounted to "discrimination and harassment." (Pl.'s Index,

14

Ex. 119 at 1-2, ECF No. 65-1.)  He also predicted that he "will be offered overtime again" after "these issues are brought to light in an official forum." (Id. at 2.)  In a fourth incident report dated November 29, 2008, the plaintiff wrote that he was denied the opportunity to work on November 27 and 28, which were scheduled to be his days off,  in retaliation for his "initiating formal action." (Pl.'s Index, Ex. 120, ECF No. 65-1.)  The plaintiff wrote yet another incident report on December 7, 2008, in which he complained that he was not offered overtime for "the fourth week in a row." (Pl.'s Index, Ex. 121, ECF No. 65-1.)  In total, there is evidence that the plaintiff was not informed of overtime opportunities that were available on six days falling between November 20, 2008, and December 4, 2008, and the plaintiff complained that these opportunities were taken by other employees.  (Pl.'s Index, Exs. 119-121; see also Compl. ¶ 15, ECF No. 1.)

On the issue of overtime scheduling, the defendant's labor contract with the union states, "The Employer will, as far as practical, offer overtime on an equal basis by state seniority . . . among those included employees in that classification assigned to the work unit who normally perform the work involved." (Def.'s Index, Ex. 3-E, ECF No. 58-3.)  It also states, "Overtime will be offered to volunteering employees within the classification and work unit, but where there is more than one volunteer, overtime shall be offered on a rotating basis beginning with the permanent employee with the most state seniority . . . ." (Id.)  In his deposition, the plaintiff admitted that DCS is not required to give employees their posting of choice when they volunteer to work on their days off, and he said that did not believe that DCS was required to offer overtime to employees. (Franks Dep. at 111:18-112:9.)

On or about December 16, 2008, the plaintiff wrote an incident report in order to document "discrimination and harassment allegations against [his] immediate supervisor, Lieutenant Sulley." (Pl.'s Index, Ex. 122, ECF No. 65-1.)  The plaintiff's report states that on December 7, 2008, Lieutenant Sulley informed the plaintiff that "he was recommending [the plaintiff] for a 'statement of charges' regarding [his] sick leave probation." (Id.)  According to the plaintiff, Sulley intended to recommend disciplinary action even though the plaintiff "met the requirements set forth by the preceding probation," and even though Sulley was aware of other comparable cases in which discipline and probation were not imposed. (Id.)  The plaintiff wrote, "I firmly believe that, due to

15

the aforementioned, Sulley is retaliating against me for the current EEOC investigation I have in progress." (Id.)

The plaintiff wrote two more incident reports on or about January 1, 2009. (Pl.'s Index, Exs. 123-124, ECF No. 65-1.)  The first of these reports states that it was being written "by order of Lieutenant Sulley." (Pl.'s Ex. 123.)  It continues, "In June 2008, I was placed on sick leave abuse probation.  August 2008 found me diagnosed with cardiac problems.  The majority of sick leave utilized by myself was directly related to my cardiac issues; including (4) four new medications for said same.  Medical notes from various physicians were included with all sick leave forms.  I also verbally informed Sulley concerning my health issues." (Id.)  In the second report, the plaintiff wrote that the first report was "entirely redundant to the sick leave issue" because he had already provided doctor's notes each time he used his sick leave. (Pl.'s Ex. 124 at 1.)  The second report also states, "Sulley told me Major English and him were going to use my doctor's notes as 'mitigating circumstances' so as to prevent me from further discipline.  This contradict's [sic] Sulley's previous recommendation for a 'statement of charges.'  It is also taking place after I have accused him of retaliation discrimination.  Now it looks as though amends are being made in lieu of the aforementioned allegations.  This in no way amends anything; in fact, it sheds light upon the issue even more." (Id. at 1-2.)

In a letter dated August 4, 2009, the plaintiff wrote, "Effective August 19, 2009, I permanently resign my position" with the DCS. (Def.'s Index, Ex. 1-1, ECF No. 58-1.)  The letter cites "disability, religious, and retaliation discrimination" as the reasons for the plaintiff's resignation. (Id.)

During his employment with the DCS, the plaintiff's regular work hours and pay rate were never reduced. (Franks Dep. at 144:23-145:2.)  There is no evidence that the DCS ever took a "documented disciplinary action" against the plaintiff due to his sick leave use.  Also, the plaintiff has admitted that he did not find working at OCC to be offensive, intimidating, or oppressive to his gender. (Franks Dep. at 140:4-12.)

On July 26, 2010, the plaintiff filed a four-count complaint against the defendant. (ECF No. 1.)  Count I alleges that the defendant "discriminated against the plaintiff based on religion" and subjected the plaintiff to "a hostile work environment." (Compl. at 3, ECF No. 1.)  Count II alleges

16

that the defendant "discriminated against the plaintiff based on disability" and subjected the plaintiff to "a hostile work environment." (Id. at 4.)  Count III alleges that the defendant "discriminated against the plaintiff based on gender" and subjected the plaintiff to "a hostile work environment." (Id.)  Finally, Count IV alleges that the defendant retaliated against him by denying him overtime in November and December 2008 and by recommending that he be disciplined due to his use of sick leave.  (Id. at 5.)  Each of the counts appears to be based on both state and federal law.  (See id. at 1, 3-5.)  The defendant has moved for summary judgment on all of the plaintiff's claims.  (See Mot. for Summ. J., ECF No. 56.)

## B.   Standard of Review

A motion for summary judgment shall be granted by the court "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A "material" fact is one that "might affect the outcome of the suit under the governing law," and a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  See also Haigh v. Gelita USA, Inc., 632 F.3d 464, 468 (8th Cir. 2011). In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party, Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970), and the court must not weigh evidence or make credibility determinations, Anderson, 477 U.S. at 249.

It is the moving party's burden to establish that no genuine issue of material fact exists.  Fed. R. Civ. P. 56(a); Adickes, 398 U.S. at 157.  Therefore, if the moving party does not meet its initial burden, summary judgment must be denied even if no affidavits or other evidence have been submitted in opposition to the motion.  See Adickes, 398 U.S. at 159-60.  After the moving party has met its burden, however, "the non-moving party may not rest on the allegations of his pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists."  Singletary v. Missouri Dept. of Corrections, 423 F.3d 886, 890 (8th Cir. 2005).

## C.   Analysis

As noted above, the plaintiff claims that he suffered discrimination based on his religion, disability, and gender, and that he suffered retaliation after he complained about the discrimination. (See generally Compl., ECF No. 1.)  The defendant argues that it is entitled to summary judgment

on all of these claims.  (See generally ECF Nos. 56-57.)  I shall analyze each of the plaintiff's claims to determine whether summary judgment is appropriate.

1.      Discrimination on the Basis of Religion

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended, "makes it 'an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (quoting 42 U.S.C. § 2000e-2(a)(1)).  The plaintiff alleges that he suffered religious discrimination in violation of Title VII, and his claim (construed broadly) appears to be based on three distinct theories: (1) the defendant failed to accommodate the plaintiff's religious beliefs when it denied his request to carry a pocket-sized Bible "as an article of faith"; (2) although the plaintiff was not allowed to carry his Bible, "other female employees were allowed to bring vast reading material to their work stations"; and (3) the plaintiff's work environment was "hostile." (See Compl. at 2-3, ECF No. 1.)  I shall consider each of these theories in turn to determine whether summary judgment is in order.

First, the plaintiff alleges that the defendant failed to accommodate his religious beliefs by denying his request to carry a pocket-sized Bible.  To establish a prima facie case of religious discrimination based on a "failure to accommodate" theory, the plaintiff must show that (1) he has a bona fide religious belief that conflicts with an employment requirement, (2) he informed the defendant of this belief, and (3) he was disciplined for failing to comply with the conflicting employment requirement.  See Jones v. TEK Industries, Inc., 319 F.3d 355, 359 (8th Cir. 2003); Wilson v. U.S. West Communications, 58 F.3d 1337, 1340 (8th Cir. 1995).  If the plaintiff establishes a prima facie case, the burden shifts to the employer to show either that it offered the plaintiff a reasonable accommodation or that doing so would cause the employer to suffer an unreasonable hardship.  See Jones, 319 F.3d at 359-60; Wilson, 58 F.3d at 1340; see also Ansonia Bd. of Educ. v. Philbrook, 479 U.S. 60, 68-69 (1986).  In support of its motion for summary judgment, the defendant argues that the plaintiff cannot establish a prima facie case because he lacks a bona fide religious belief that conflicts with an employment requirement, and he was never disciplined for failing to comply with such an employment requirement. (Def..'s Br. at 15-16, ECF

18

No. 57.)  It adds that even if the plaintiff can establish a prima facie case, the defendant offered him a reasonable accommodation.

Although the defendant has submitted evidence suggesting that the plaintiff's religious beliefs are not bona fide, (see Def.'s Statement of Facts ¶ 29), there is also evidence indicating that the plaintiff treated his Bible as a special, personal article of faith, (e.g., Pl.'s Index, Ex. 116, ECF No. 65-1).  I find that a fair assessment of the plaintiff's sincerity would require the sort of credibility determination that is best left for trial, see EEOC v. Abercrombie & Fitch Stores, Inc., No. 4:08CV1470, 2009 WL 3517578, at *3 (E.D. Mo. Oct. 26, 2009), and the defendant's motion must be denied insofar as it hinges upon the genuineness of the plaintiff's beliefs.

I agree with the defendant, however, that the plaintiff was not disciplined because of the conflict between his religious beliefs and employment requirements.  The record shows that the plaintiff carried his Bible into work on September 10, 2007, when it was seized following a pat search.  Shortly thereafter, the plaintiff was counseled that his Bible was considered contraband; that possessing the Bible within the OCC violated the Employee Handbook, and that further violations of this nature would not be tolerated.  The counseling form states on its face, however, that the counseling was not intended "to be a documented disciplinary action," and it would "not become a part of the personnel file."  Indeed, the plaintiff does not argue that his counseling amounted to "discipline" that could satisfy the third element of his prima facie case.  Moreover, there is no evidence that the plaintiff ever carried the Bible to work between September 10, 2007, and the date of his resignation in August 2009--much less that he was disciplined for doing so.[10]  When an employee accedes to employment requirements that conflict with his religious beliefs, and thereby avoids suffering any adverse employment consequences, he cannot succeed on a "failure to accommodate" claim.  See Johnson v. Midcoast Aviation, No. 4:06CV1805(CEJ), 2008 WL 3200801, at *7-8 (E.D. Mo. Aug. 6, 2008) (citing cases).  As one district court explained in an analogous case,

> By agreeing to work on her Sabbath, whether willingly or reluctantly, Plaintiff
> avoided suffering any adverse employment consequences as a result of her religious

---

[10] I note in passing that the plaintiff has not alleged in his complaint that he was constructively discharged.

beliefs; rather, her personal religious observances suffered on account of her adherence to her work schedule. Yet, Title VII protects only the former, employment-related interests from abridgement. . . .

. . . In essence, although Plaintiff's religious beliefs ostensibly conflicted with the demands of her job, she subordinated the former to the latter, thereby avoiding a conflict which otherwise might have led her employer to take adverse action against her. This Court does not mean to question the sincerity of Plaintiff's religious beliefs. Rather, it simply observes that Plaintiff's failure to insist upon strict adherence to these beliefs, even at the cost of negative job consequences, effectively absolved her employer of the responsibility to reasonably accommodate her beliefs.

Stone v. West, 133 F. Supp. 2d 972, 985-86 (E.D. Mich. 2001).[11]

In opposition to the defendant's motion, the plaintiff argues that the defendant has failed to show that it would suffer harm if the plaintiff were allowed to carry his Bible, and he emphasizes that he was not offered a reasonable accommodation. (Pl.'s Br. at 6-8, ECF No. 65.) Because the plaintiff failed to establish a prima facie case of discrimination, however, I do not reach these questions. E.g. Jones, 319 F.3d at 360. The plaintiff also quotes a passage from Altman v. Minnesota Department of Corrections, 251 F.3d 1199, 1204 (8th Cir. 2001), that concerns "First and Fourteenth Amendment right to freely exercise . . . religion." (See Pl.'s Br. at 6.) This portion of Altman is inapposite, however, because the plaintiff has not alleged a free exercise claim.

In short, I find that there is no genuine issue for trial, and the defendant is entitled to summary judgment on Count I to the extent that it alleges a religious discrimination claim based on a "failure to accommodate" theory.

The plaintiff's second theory is based on allegations that he suffered disparate treatment on the basis of his religion. See Sturgill v. United Parcel Service, Inc., 512 F.3d 1024, 1034 (8th Cir. 2008) ("[I]ntentional religious discrimination and the failure to reasonably accommodate an employee's religion are distinct Title VII claims."). Specifically, the plaintiff alleges that he was not allowed to carry his Bible while working, but certain female employees were allowed to bring "reading material" into the workplace.

---

[11] It merits mention that in such a case, "allegations that the employer was hostile to [the] plaintiff's religious beliefs may be relevant" to a disparate treatment claim. Johnson, 2008 WL 3200801, at *8 (discussing Isse v. American University, 540 F. Supp. 2d 9, 29 (D.D.C. 2008)).

"A disparate treatment plaintiff must establish 'that the defendant had a discriminatory intent or motive' for taking a job-related action." Ricci v. DeStefano, 129 S. Ct. 2658, 2672 (2009) (quoting Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 986 (1988)). To survive a motion for summary judgment, the plaintiff must establish this discriminatory motive "either by proof of 'direct evidence' of discrimination, or by creating the requisite inference of unlawful discrimination through the burden-shifting framework" outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). EEOC v. Trans States Airlines, Inc., 462 F.3d 991-92 (8th Cir. 2006). See also U.S. Postal Service Board of Governors v. Aikens, 460 U.S. 711, 714 n.3 (1983); Qamhiyah v. Iowa State University of Science & Technology, 566 F.3d 733, 746 (8th Cir. 2009); Griffith v. City of Des Moines, 387 F.3d 733, 736 (8th Cir. 2004). In this case, the parties agree that the plaintiff's claim must be analyzed under the McDonnell Douglas framework. (See Def.'s Br. at 14, ECF No. 57; Pl.'s Br. at 4, ECF No. 65.)

To establish a prima facie case under the McDonnell Douglas framework, the plaintiff must show that (1) he is a member of a protected class, (2) he was qualified for his position, and (3) he suffered an adverse employment action under circumstances permitting an inference that the action was the result of unlawful discrimination. Johnson v. Ready Mixed Concrete Co., 424 F.3d 806, 810 (8th Cir. 2005). The final element is typically satisfied by showing that similarly situated employees that were not members of the protected class were treated differently. See, e.g., Pye v. Nu Aire, Inc., 641 F.3d 1011, 1019 (8th Cir. 2011); see also Bray v. Douglas County, Nebraska, No. 06-2638, 2007 WL 256755, at *1 (8th Cir. Jan. 31, 2007) (holding that because the plaintiff "did not proffer evidence showing any other officer was outside her protected religious class," "the district court correctly concluded she had not established a prima facie case of religious discrimination and could not succeed on her claims as a matter of law"); Mann v. Frank, 7 F.3d 1365, 1370 (8th Cir. 1993). But see McGinnis v. Union Pacific R.R., 496 F.3d 868, 874 n.2 (8th Cir. 2007) (explaining that Title VII requires only that the adverse employment action occurred under circumstances which create an inference of unlawful discrimination). After the plaintiff establishes a prima facie case, "[t]he burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason" for the adverse employment action. Johnson, 424 F.3d at 810. If the employer meets this burden, "the plaintiff must show that the employer's reason is a pretext for intentional discrimination." Id.

21

I shall assume for the purposes of analysis that the plaintiff is a member of a protected class and was qualified for his position. I find, however, that the plaintiff has not referred me to any evidence showing that religious discrimination was a motivating factor in the defendant's decision to ban him from bringing his Bible to the workplace. See Roberts v. Park Nicollet Health Services, 528 F.3d 1123, 1127 (8th Cir. 2008) ("At the summary judgment stage . . . the issue is 'whether the plaintiff has sufficient evidence that unlawful discrimination was a motivating factor in the defendant's adverse employment action.'" (quoting Griffith v. City of Des Moines, 387 F.3d 733, 735 (8th Cir. 2004))). As noted above, the plaintiff claims that he was prohibited from carrying his Bible while "female employees were allowed to bring vast reading material to their work stations," (Compl. ¶ 8, ECF No. 1; see also Pl.'s Br. at 4, 7, ECF No. 65; Franks Aff. ¶ 7, ECF No. 65-1), but there is no evidence that the female employees were treated more favorably for any religious reason. On the contrary, there is evidence that the female employees shared the same religion as the plaintiff and also carried Bibles among their "vast reading material." (See, e.g., Def.'s Ex. 1, Franks Dep. at 92:25-93:17, ECF No. 58-1 (indicating that one of the females did bring in "Christian religious books," and others might have done so); Def.'s Ex. 3-C, ECF No. 58-3 (indicating that the female named by the plaintiff was also found with a Bible in her possession during the pat search).) I also note that the pat search conducted on September 10, 2007, led to the discovery of a variety of items, including "personal books" and "magazines," all of which were described as "contraband" by the defendant. (See Def.'s Index, Ex. 3-C.) In other words, there is no evidence that the defendant singled out the plaintiff's Bible for designation as contraband. Furthermore, as explained more thoroughly in Parts II.C.2-3 below, the defendant's decision to deny the plaintiff's request to carry his Bible did not rise to the level of an adverse employment action. Thus, I must conclude that the third element of the plaintiff's prima facie case has not been satisfied.

In short, the facts alleged by the plaintiff are simply inadequate to support a claim that he suffered disparate treatment due to his religion, and I find that the defendant is entitled to summary judgment on the plaintiff's claim.

The plaintiff's third theory of recovery is based on an allegation that his work environment was hostile to his religion. (See Compl. at 3, ECF No. 1; Pl.'s Br. at 7, ECF No. 65.) Title VII "prohibits an employer from subjecting its employees to a hostile work environment 'because of

such individual's race, color, religion, sex, or national origin.'" Al-Zubaidy v. TEK Industries, Inc., 406 F.3d 1030, 1038 (8th Cir. 2005) (quoting 42 U.S.C. § 2000e-2(a)(1)).  However, "Title VII is violated only '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  Id. (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)) (internal quotation marks omitted).

In this case, the plaintiff's religious-based harassment claim is based solely on evidence that he was not allowed to carry his Bible at work.  (See Pl.'s Br. at 7, ECF No. 65; Compl. at 2-3, ECF No. 1.)  There is no indication that discriminatory intimidation, ridicule, or insult was ever directed at the plaintiff due to his religion.  Although it is true that a single incident can form the basis of a harassment claim if it is "extremely serious," Al-Zubaidy, 406 F.3d at 1039 (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)), I have considered all of the circumstances, and I find as a matter of law that the plaintiff's claim does not rise to the level of actionable harassment; no reasonable person would perceive the environment to be objectively hostile to the plaintiff's religion. The defendant is entitled to summary judgment on the plaintiff's harassment claim.

In opposition to the defendant's motion, the plaintiff argues that "both the disparate treatment and disparate impact theories of discrimination are shown" in this case.  (Pl.'s Br. at 6, ECF No. 65.) Title VII does prohibit employers from engaging in facially-neutral employment practices that have a disparate impact on a protected group.  See 42 U.S.C. § 2000e-2(k).      To establish a prima facie case of discrimination based on a disparate impact theory, however, the plaintiff must establish that there is "(1) an identifiable, facially-neutral personnel policy or practice; (2) a disparate effect on members of a protected class; and (3) a causal connection between the two."  Bennett v. Nucor Corp., 656 F.3d 802, 817 (8th Cir. 2011) (quoting Mems v. City of St. Paul, 224 F.3d 735, 740 (8th Cir. 2000)).  See also Ricci v. DeStafano, 129 S. Ct. 2658, 2673 (2009).  The plaintiff neither alleges in his complaint nor argues in his brief that the defendant engaged in a particular employment practice that, while neutral on its face, caused a disparate impact on employees due to their religion. The plaintiff has no viable religion-based disparate impact claim.

I note in passing that the plaintiff's claims of religious and gender discrimination are based on both Title VII and the Nebraska Fair Employment Practices Act (NFEPA), Neb. Rev. Stat. §§ 48-

23

1101 to 48-1126.  (See Compl. ¶ 1, ECF No. 1.)  The Nebraska Supreme Court and the Eighth Circuit "have stated the NFEPA 'is patterned after Title VII,' and, therefore, 'it is appropriate to consider federal court decisions construing the federal legislation' when considering questions under the NFEPA."  Al-Zubaidy, 406 F.3d at 1039 (quoting City of Fort Calhoun v. Collins, 243 Neb. 528 (Neb. 1993)).  In this case, the plaintiff's state and federal claims are based on the same facts, and neither the plaintiff nor the defendant has suggested that the plaintiff's state claims should be analyzed any differently than his federal claims.  Under the circumstances, I conclude that plaintiff's NFEPA claims must meet the same fate as his Title VII claims.

In summary, I find that no reasonable jury could return a verdict in favor of the plaintiff on his religious discrimination claim, and the defendant is entitled to summary judgment on Count I of the plaintiff's complaint.

2.      Discrimination on the Basis of Disability

The Americans with Disabilities Act (ADA) prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  To establish a prima facie case under the ADA, a plaintiff must show that (1) he has a disability within the meaning of the ADA; (2) he is qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) he suffered an adverse employment action due to a disability.  Tusing v. Des Moines Independent Community School Dist., 639 F.3d 507, 518 (8th Cir. 2011) (quoting Chalfant v. Titan Distribution, Inc., 475 F.3d 982, 988 (8th Cir. 2007)).  The defendant argues that it is entitled to summary judgment on the plaintiff's ADA claim because the plaintiff cannot establish either the first or the third of these elements.  Although there is merit to the defendant's argument that the plaintiff is not disabled within the meaning of the ADA, the plaintiff has clearly failed to show that he suffered an adverse employment action due to a disability.

"An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage."  Buboltz v. Residential Advantages, Inc., 523 F.3d 864, 868 (8th Cir. 2008), abrogated in part on other grounds by Torgerson v. City of Rochester, 643 F.3d 1031 (8th Cir. 2011).  "Termination, cuts in pay or benefits, and changes that affect an employee's future

24

career prospects are significant enough to meet this standard, as are circumstances amounting to a constructive discharge." Id. (citing Higgins v. Gonzales, 481 F.3d 578, 584 (8th Cir.2007)). "Changes in intangible employment conditions may also constitute an adverse employment action." Id. (citing Meyers v. Neb. Health & Human Services, 324 F.3d 655, 660 (8th Cir.2003). "Nevertheless, 'not everything that makes an employee unhappy is an actionable adverse action.'" Id. (quoting Montandon v. Farmland Industries, Inc., 116 F.3d 355, 359 (8th Cir.1997)). "For example, a job reassignment involving no corresponding reduction in salary, benefits, or prestige is insufficient to establish an adverse employment action." Id. (citation omitted). "Additionally, minor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage do not satisfy this prong." Id. (citations omitted).

In his complaint, the plaintiff alleges that he "was harassed by the defendant for his use of sick leave" from February 2005 until June 10, 2008," and that he lost wages, leave time, and other benefits due to the defendant's actions. (Compl. ¶¶ 5, 10 ECF No. 1.) These allegations are not supported by the record. There is no evidence that the plaintiff's pay, grade, or benefits were reduced at any time, and although he was reassigned to the Central Control Area as he recovered from his leg injury, the plaintiff does not argue that this reassignment amounted to an adverse employment action. Nor is there any evidence that the plaintiff was the target of unwelcome harassment directed toward him because of his disability.

In his brief, the plaintiff argues that he suffered three distinct adverse employment actions: (1) he was placed "on probation" for sick leave abuse; (2) Lieutenant Sulley disclosed his intention to recommend that the plaintiff receive a "Statement of Charges"; and (3) the plaintiff was unable to obtain the overtime work that he desired. (Pl.'s Br. at 4, 6, ECF No. 65.) I am not persuaded that these events constitute "adverse employment actions." First, the evidence shows that the defendant did not consider the counseling logs that the plaintiff received in connection with his sick leave abuse–including the counseling log of June 10, 2008, which imposed supervision and documentation requirements upon him–to be disciplinary actions, and they were not made part of his personnel file. Though the requirements imposed on the plaintiff on June 10, 2008, may have been "unpalatable or unwelcome," they caused no materially significant disadvantage. Second, although there is evidence that Lieutenant Sulley informed the plaintiff that he intended to recommend a "Statement of

25

Charges" due to his sick leave abuse, the record indicates that Sulley reversed his position, and no disciplinary action was taken against the plaintiff. Finally, the plaintiff's claim that his inability to obtain certain overtime assignments amounted to an adverse employment action is undermined by his admission that the defendant was not required to offer him overtime or give him the particular overtime assignments that he desired. Furthermore, even if the plaintiff's loss of overtime opportunities <u>did</u> amount to an adverse employment action, the plaintiff has not referred me to any evidence that his alleged disability was a motivating factor in the defendant's overtime assignment decisions. <u>See</u> <u>Chalfant v. Titan Distribution, Inc.</u>, 475 F.3d 982, 991 (8th Cir. 2007) ("An adverse action by itself is not sufficient for a successful claim under the ADA. Instead, there must be a 'specific link' between the discrimination and the adverse action to prove that the discrimination motivated the adverse action."). After carefully considering the evidence cited by the parties, I find that the plaintiff has failed to show that he suffered an adverse employment action due to a disability. As a result, there is no genuine issue for trial, and the defendant is entitled to summary judgment.

As noted above, there is no evidence that the plaintiff suffered from harassment that was sufficiently severe or pervasive to alter the conditions of his employment or create an abusive working environment. Therefore, the defendant is entitled to summary judgment on the plaintiff's disability-based harassment claim.

Finally, I note that because the NFEPA is patterned after the ADA, <u>see</u> <u>Orr v. Wal-Mart Stores, Inc.</u>, 297 F.3d 720, 723 (8th Cir. 2002), and because neither party has proposed that the plaintiff's state law claims for disability discrimination ought to be analyzed using principles other than those discussed above, I find that the defendant is entitled to summary judgment on those claims. In short, summary judgment will be granted in the defendant's favor on the entirety of Count II.

3.      Discrimination on the Basis of Gender

As noted in Part II.C.1, Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). The plaintiff alleges that he suffered both

26

harassment and disparate treatment based on his gender.  (See generally Compl., ECF No. 1.)  I shall consider each of the plaintiff's theories of recovery in turn.[12]

The plaintiff's sex-based harassment claim is easily disposed of.  As outlined previously, Title VII is violated only if the workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Al-Zubaidy v. TEK Industries, Inc., 406 F.3d 1030, 1038 (8th Cir. 2005) (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)) (internal quotation marks omitted).  In addition, "[t]he environment must be both objectively hostile as perceived by a reasonable person and subjectively abusive as actually viewed" by the plaintiff. Anderson v. Durham D & M, L.L.C., 606 F.3d 513, 518 (8th Cir. 2010).  In this case, the plaintiff's hostile work environment claim is based solely on evidence that "female employees were allowed to bring vast [amounts of] reading material to their work stations," but the plaintiff "could not carry his Bible."  (Compl. ¶ 8.  See also Franks Aff. ¶ 7.)  There is no evidence of "discriminatory intimidation, ridicule and insult," and on this record it is clear that no reasonable person would perceive the working environment to be hostile to the plaintiff's sex.  Indeed, the plaintiff has admitted that he did not find the workplace to be offensive, intimidating, or oppressive to his gender. (See Franks Dep. at 140:4-12.)  In other words, the plaintiff has failed to satisfy both the objective and subjective components of a hostile work environment claim, and therefore summary judgment is appropriate.

To establish a prima facie case of disparate treatment under the McDonnell Douglas framework, the plaintiff must show that he is a member of a protected class, he was qualified for his job, and he suffered an adverse employment action under circumstances that give rise to an inference of discrimination.  Norman v. Union Pacific R.R. Co., 606 F.3d 455, 460 (8th Cir. 2010); Johnson v. Ready Mixed Concrete Co., 424 F.3d 806, 810 (8th Cir. 2005).  Again, the plaintiff's claim is based solely on evidence that female employees brought reading material to the workplace, but the plaintiff was not allowed to carry his Bible.  I do not doubt that the plaintiff's Bible was important to him, or that he was upset by the defendant's decision to deem it contraband.  As noted above,

---

[12] As noted in Part II.C.1 above, the plaintiff's state law claims will be evaluated using the same cases and principles that apply to his Title VII claims.

however, "not everything that makes an employee unhappy is an actionable adverse action." Buboltz, 523 F.3d at 868 (quoting Montandon, 116 F.3d at 359). Although the banning of the Bible represented an "unpalatable" and "unwelcome" change to his working conditions, see id., it did not cause the plaintiff to suffer a significant employment disadvantage.

Furthermore, even if I were to assume that being denied permission to carry a Bible amounts to an adverse employment action, the plaintiff has failed to produce evidence that could support an inference of sex discrimination. By way of example, the plaintiff has not shown that any of the females who brought reading material to work were similarly situated to him: There is no evidence that any of the women worked in the same positions as the plaintiff, and there is no evidence that the women carried their reading materials with them at all times, as the plaintiff hoped to do with his Bible. I do not mean to suggest that the plaintiff cannot establish a prima facie case without such evidence. However, there must be "circumstances that give rise to an inference of discrimination," and in this case the record does not allow for such an inference.

For the foregoing reasons, I find that the defendant is entitled to summary judgment on Count III of the plaintiff's complaint.

4.     Retaliation

Count IV of the complaint states that the plaintiff "filed a charge of retaliation against the defendant alleging that he was not offered overtime after filing his complaint," and thereafter "further disciplinary actions" were "recommended based on the plaintiff's use of sick leave." (Compl. ¶¶ 15-16, ECF No. 1.) "Title VII's antiretaliation provision forbids employer actions that 'discriminate against' an employee . . . because he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 59 (2006) (quoting 42 U.S.C. § 2000e-3(a)). "To state a prima facie case of retaliation, an employee must show that he engaged in protected activity; he suffered a materially adverse action that 'would deter a reasonable employee from making a charge of employment discrimination'; and there is a causal connection between the protected activity and the adverse action." Barber v. C1 Truck Driver Training, LLC, 656 F.3d 782, 801-02 (8th Cir. 2011) (quoting Fercello v. County of Ramsey, 612 F.3d 1069, 1077-

78 (8th Cir. 2010)).  The defendant argues that summary judgment is in order because the plaintiff did not suffer "an adverse employment action."  (Def.'s Br. at 19, ECF No. 57.)

I agree with the defendant that the plaintiff has not shown that he suffered a "materially adverse employment action."  Fercello, 612 F.3d at 1079.  As explained previously, the plaintiff was not disciplined for his use of sick leave.  It is true that a supervisor intended to recommend disciplinary action at one point, but the record shows that the supervisor reversed himself, and no "Statement of Charges" was filed.  See id. at 1080-81 (indicating that actions that were proposed but not completed are not evidence of retaliation when no "negative consequences" stemmed from it). Also, although there is evidence that the plaintiff missed opportunities to work overtime on six days between November 20, 2008, and December 4, 2008, the plaintiff has admitted that the defendant was not required to assign him overtime, and there is no evidence that the plaintiff was denied any other desired overtime assignments before his August 2009 resignation.  There is also no evidence that the relevant overtime assignments were made in violation of the terms of the labor contract.  I find that missing a few overtime opportunities during a limited period would not deter a reasonable employee from making a discrimination claim, especially when the record indicates that the overtime-related complaints were quickly rectified.[13]

As mentioned previously, the NFEPA is patterned after Title VII, and neither party has suggested that the differences between the statutes would require different analyses of the plaintiff's state and federal claims in this case.  I therefore find that the defendant is entitled to summary judgment on Count IV in its entirety.

For the reasons set forth above, I find that there is no genuine issue for trial, and the defendant is entitled to judgment as a matter of law on each of the plaintiff's claims.

---

[13] I note parenthetically that the plaintiff has not quantified the loss associated with his six missed overtime opportunities, which undermines his ability to show that he suffered a material disadvantage.

**IT IS ORDERED** that the defendant's motion for summary judgment, ECF No. 56, is granted, and the defendant's motion to strike, ECF No. 68, is granted in part as explained in the memorandum accompanying this order.

Dated January 10, 2012.

BY THE COURT


s/ Warren K. Urbom
United States Senior District Judge

30